FILED17 APR '24 15:40USDC-ORP

**Jane L. Moisan**, OSB No. 181864
jane@pdxplp.com
PEOPLE'S LAW PROJECT
1500 S.W. First Avenue, Suite 1000
Portland, OR 97201
Tel. (971) 258-1292
Fax. (503) 558-2025

*Attorneys for Plaintiff Anna Medina*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA *ex rel.* ANNA MEDINA, AND ANNA MEDINA**<br><br>Plaintiffs,<br><br>v.<br><br>**UAA GLEN RIDGE, LLC; NORRIS & STEVENS, INC., DK OREGON, INC., and BECHTOLDT FAMILY LIVING PARTNERSHIP**<br><br>Defendants. | **FILED UNDER SEAL**<br><br>Civil Action No.  3:24-CV-602-HZ<br><br>**COMPLAINT**<br><br>False Claims Act, 31 U.S.C. § 3729 *et seq.*<br>Oregon Fair Housing Act<br>Oregon Residential Landlord Tenant Act<br><br>**REQUEST FOR JURY TRIAL** |

### I. PRELIMINARY STATEMENT

1.      *Qui Tam* Plaintiff Anna Medina brings this action under the False Claims Act, 31

U.S.C. § 3729 *et seq.* ("FCA"), the Oregon Fair Housing Act, ORS 659A.421 *et seq.*, and the

Oregon Residential Landlord Tenant Act by and through her attorney, Jane L. Moisan of

#106689

People's Law Project, against Defendants UAA Glen Ridge, LLC; Norris & Stevens, Inc.; DK Oregon, Inc.; and Bechtoldt Family Living Partnership.

2.      Plaintiff Anna Medina is a tenant who currently rents and has rented a one-bedroom apartment from the Defendants in Beaverton, Oregon since August 2017.

3.      During various relevant periods for each, Defendants UAA Glen Ridge, DK Oregon, Inc., and Bechtoldt Family Living Partnership obtained or caused to be obtained rental subsidy payments from the United States Department of Housing and Urban Development ("HUD") while participating as owner/landlord of a leased residential property through HUD's Tenant-Based Housing Choice Voucher Program, commonly known as Section 8. Defendant Norris & Stevens acted as the property manager and facilitated these requests for payment.

4.      The Housing Choice Voucher program ("HCV program") is a federal program funded by Congress to provide assistance to low-income individuals so that they may find affordable, safe, and decent housing in the private rental market.

5.      Plaintiff's rent has been subsidized by HUD through the HCV program since she moved into Defendants' property in August 2017. Pursuant to HUD regulations and guidelines, Plaintiff's federally funded voucher is administered by the local housing authority, Washington County Department of Housing Services ("WCDHS").

6.      In administering the HCV program, WCDHS determines the contract rent for each of its HCV program participants, and this becomes the rental price for the annual lease, known as the HAP Contract.

7.      Since August 2017, Defendants have contracted annually with WCDHS to accept federal funding on Plaintiff's behalf through the HCV program. As part of each annual contract with the local housing authority, Defendants have agreed to charge Plaintiff for rent each month

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

no more than the maximum "contract rent" for her apartment.

8.    From the period of January 2021 through September 2023, and inclusive of thirty-three (33) months, Defendants charged Plaintiff in excess of the maximum amount they had agreed to charge by entering into the HAP Contract. These excessive charges included unauthorized rent increases, pet rent, late fees, and utility charges. Taken together, Defendants assessed Plaintiff a total of ninety-six (96) individual charges in violation of their HAP Contract.

9.    In so doing, Defendants violated contractual and regulatory certifications and conditions required for the receipt of federal funds.

10.    Defendants knowingly made false claims and representations, and knowingly violated material policies and conditions laid out in the contracts they executed or caused to be executed each year in order to continue to participate in and receive federal funding in the form of Housing Choice Voucher payments.

11.    Defendants' actions violated the False Claims Act. Due to Defendants' violations, Plaintiff seeks a statutory share of the civil penalties and treble actual damages, as well as costs and reasonable attorney's fees pursuant to 31 U.S.C. § 3729 *et seq.*

12.    In addition, Defendants engaged in unlawful source of income discrimination in violation of the Oregon Fair Housing Act, for which Plaintiff seeks compensatory damages and attorney fees and costs pursuant to ORS 659A.885.

13.    Finally, Defendants also violated the Oregon Residential Landlord Tenant Act in asserting rent increases and fees in the manner described herein. Plaintiff seeks correlating statutory and actual damages, as well as reasonable attorney fees and costs pursuant to ORS 90.255.

**II. JURISDICTION AND VENUE**

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

14.     This court has jurisdiction over Plaintiff's federal statutory claims pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

15.     The court has supplemental jurisdiction over pendant state law claims under 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b) because Defendants' violations of state law arise from the same transactions or occurrences, and arise out of a common nucleus of operative fact, giving rise to Plaintiff's claim under 31 U.S.C. §3730.

16.     Venue is proper pursuant to 28 U.S.C. § 1391 and 31 U.S.C. Section 3732(a) because Defendants transact business is this District and have addresses in this District; and because the acts giving rise to the claims occurred in this District; and the property that is the subject of this action is situated in this District.

17.     Upon information and belief, the facts and circumstances of Defendants' violations of the federal False Claims Act have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or General Accounting Office or Auditor General's report, hearing, audit, or investigation, or in the new media.

18.     *Qui Tam* Plaintiff Anna Medina, or the Relator, as the phrase is used in the False Claims Act, is the original source of information upon which this Complaint is based, and they provided disclosures of the FCA allegations of this Complaint to the United States prior to filing.

### III. PARTIES

19.     *Qui Tam* Plaintiff Anna Medina (hereinafter "Plaintiff") brings this action on her own behalf and on behalf of the United States of America to recover civil damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.* Plaintiff is a residential tenant at 8015 SW Hall Boulevard, Unit 13, Beaverton, OR 97008 (hereinafter "Residence"). At all times relevant to this complaint, Plaintiff was an HCV voucher recipient; thus, Plaintiff's tenancy was

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

subsidized by the Federal Government and subject to Department of Housing and Urban

Development regulations and all applicable Federal law.

20.     Upon information and belief, Defendants UAA Glen Ridge, LLC; Bechtoldt

Family Limited Partnership Agreement; and DK Oregon, Inc. (hereinafter collectively referred to

as "Landlord Defendants") held an ownership interest in the Residence and in payments under

the HAP Contract for all or a portion of the times relevant to this action.

21.     Upon information and belief and for all times relevant to this action, Defendants

Norris & Stevens, Inc. (hereinafter "Norris & Stevens") performed property management for the

Landlord Defendants and was responsible for management and collection of rent for the

Residence and was responsible in some manner for the occurrences herein alleged. Plaintiff's

damages as herein alleged were proximately caused by them.

22.     Plaintiff communicated on a routine basis with Defendant Norris & Stevens

concerning her tenancy and Defendant Norris & Stevens responded and acted as duly authorized

property managers for the subject premises.

23.     Upon information and belief, Plaintiff alleges that Defendant Norris & Stevens

acted as authorized agents of the Landlord Defendants.

24.     Upon information and belief, each Defendant acted in concert and with the

knowledge and authorization of their co-defendants, and were generally acting within the course

and scope of their agency and employment.

## IV. FACTUAL BACKGROUND

**A.     *Defendants and the Washington County Department of Housing Services Executed a Contract for WCDHS to Make Rental Assistance Payments to the Landlord Defendants on Ms. Medina's Behalf.***

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

25.    Since August 2017, Plaintiff Anna Medina ("Ms. Medina") has been a tenant at the Glen Ridge Apartments, located at 8015 SW Hall Boulevard, #13, Beaverton, Oregon 97008 ("Residence").

26.    On August 10, 2017, Defendant Norris & Stevens executed a Housing Assistance Payment ("HAP") Contract with the Federal Government and on behalf of the Landlord Defendants, administered through the Washington County Department of Housing Services ("WCDHS"), for WCDHS to make Housing Choice Voucher assistance payments to Defendants on behalf of Ms. Medina.

27.    Upon information and belief, the Landlord Defendants were assignees and beneficiaries of the HAP Contract.

28.    The Housing Choice Voucher ("HCV") program, was authorized by Congress in 1974 through the Housing and Community Development Act of 1974 (Pub.L. 93-383, 88 Stat. 633, enacted August 22, 1974), which amended the United States Housing Act of 1937 (Pub.L. 75-412, 50 Stat. 888, enacted September 1, 1937), as amended, 42 U.S.C. § 1437f. The federal government instituted the HCV program to enable low-income individuals and families to obtain decent, safe, and affordable rental housing. 42 U.S.C. § 1437f(a); 24 C.F.R. § 982.1(a).

29.    The United States Department of Housing and Urban Development (hereinafter "HUD") has promulgated regulations for the HCV Program requirements. 24 C.F.R. § 982.2. Public housing agencies (hereinafter "PHAs") administer the HCV Program. 42 U.S.C. § 1437a(b)(6)(B)(i); 24 C.F.R. § 982.1(a). PHAs are created at the directive of Congress. In Oregon, PHAs are created by state statute, ORS 456.075.

30.    WCDHS is the PHA for Washington County.

---

Page 7 - COMPLAINT

31.     As was done here, HUD enters into annual contribution contracts with PHAs to provide housing assistance payments to landlords on behalf of eligible low-income families through the HCV Program. 42 U.S.C. § 1437f(o); 24 C.F.R. § 982.151.

**B.     *Defendants Agreed Not to Charge More Than the Maximum Allowable Rent Under the HAP Contract.***

32.     In exchange for receiving payments via the HCV program, Defendants agreed not to charge more than the maximum allowable rent, or "contract rent," under the HAP Contract.

33.     The process through which the parties agree to a rental price is dictated by applicable rules and regulations. Once accepted into the HCV Program, a low-income participant locates a suitable rental unit in the private market. If the participant finds a suitable rental unit and the landlord approves, the tenant then requests PHA approval of the tenancy. 24 CFR § 982.302.

34.     A PHA may not approve a tenancy unless it meets certain eligibility requirements. 24 C.F.R. § 982.305. One of the eligibility requirements is that the total monthly rent to the owner must be reasonable. 24 C.F.R. § 982.305(a)(4). The PHA determines the reasonable rent to be paid to a landlord in comparison with rents charged for comparable residential properties in the private, unassisted local market. 42 U.S.C. § 1437f(o)(10)(A); 24 C.F.R. § 982.507(b).

35.     If the PHA determines that the rent for the unit is not reasonable, the PHA shall not make housing assistance payments to the owner with respect to that unit. 42 U.S.C. § 1437f(o)(10)(B); 24 C.F.R. § 982.507(a)(1).

36.     The HAP Contract outlines the total monthly rent to be paid to the landlord as approved by the PHA. 24 C.F.R. § 982.451(b). The HAP Contract also outlines the amount of the monthly housing assistance payments paid by the PHA directly to the landlord on behalf of

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

eligible tenant, calculated in accordance with HUD regulations and other requirements. 24 C.F.R. § 982.451(b)(1).

37.    The low-income family pays the difference between the monthly housing assistance payment and the total monthly rent to the owner. 24 C.F.R. § 982.451(b)(4)(i). The tenant's share of the monthly rent is typically 30% of their adjusted income. 42 U.S.C. § 1437f(o)(2)(A).

38.    The HAP Contract prohibits the landlord from demanding or accepting any rent payments from the tenant in excess of the total rent to owner amount. HUD-52641, Part B (04/2015) ¶ 8(d); 24 C.F.R. § 982.451(b)(4).

39.    "Rent to owner" includes "all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease." HAP Contract, Part C, Section 5.e.

40.    A material term of the HAP Contract is the requirement that the rent to owner may at no time exceed the amount approved by the PHA in accordance with HUD requirements. HUD-52641, Part B (04/2015) ¶ 6(a); 24 C.F.R. § 982.451(b)(1).

41.    The HAP Contract further prohibits charges pursuant to a separate non-lease agreement between the landlord and the tenant. *See*, WCDHS, Housing Choice Voucher Program Administrative Plan (2022), 220, available at https://www.washingtoncountyor.gov/housing/documents/housing-choice-voucher-administrative-plan/download?inline.

42.    In addition to the HAP Contract, the landlord and tenant sign a lease agreement, which must be approved by the PHA. 24 C.F.R. § 982.308.

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

43.     The parties entered into a HAP Contract on August 10, 2017 and into a lease agreement on August 20, 2017.

44.     Part C, paragraph 2.b. of the HAP Contract provides that if there is a conflict between any lease provision and the provisions of the Tenancy Addendum section of the HAP Contract, the contract's provision controls.

45.     Under the HAP contract, Defendants agreed to immediately communicate changes to the lease to WCDHS, and a new HAP contract is required if there are any changes in lease requirements governing tenant or landlord responsibilities for utilities. 24 C.F.R. § 982.308(g)(1), (2).

46.     By signing the HAP Contract, Defendants agreed that endorsement of a federal subsidy check from WCDHS was certification that, except for WCDHS and any tenant rent provided for in the HAP Contract, "the owner has not received and will not receive any payments or other consideration (from the Family, the PHA, HUD or any other public or private source) as rent for the Contract Unit." HUD-52641, Part B (04/2015) ¶ 8(d).

C.     ***Defendants Requested and Accepted Payments in Excess of The Allowable Contract Rent Under the HAP Contract.***

47.     Under the August 10, 2017 HAP contract, the total rent approved by WCDHS was $1,150.00. Under the 2017 lease, the total utilities were $30.00, consisting of $25.00 for water/sewer and $5.00 for garbage.

48.     As a material term to the receipt of federal funds, Defendants were required to provide WCDHS with notice of "any changes in the amount of the rent to owner at least sixty days before any such changes go into effect, and any such changes shall be subject to rent reasonableness requirements." 24 C.F.R. § 982.308(g)(4).

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

49.     Without providing proper notice to WCDHS or receiving WCDHS approval, Defendants charged Ms. Medina increased utility billing, pet rent, rent and late fees in violation of their HAP Contract a total of ninety-six (96) times over the course of thirty-three (33) months.

50.     **Utility Billing.** On or about January 1, 2021, Defendants increased the utility charges for garbage from $5.00 to $10.00. From January 2021 through August 2023, inclusive and for a total of 32 months, Defendants charged Ms. Medina in excess of the maximum rent permitted by the HAP contract for the garbage utility.

51.     On April 1, 2022, Defendants increased the utility charges for water and sewer from $25.00 to $35.00, and for garbage from $10.00 to $15.00. From April 2022 to August 2023, inclusive and for a total of 17 months, Defendants charged Ms. Medina more than the HAP contract allowed for the water/sewer utility.

52.     Defendants did not communicate these changes in Ms. Medina's responsibilities for utilities to WCDHS. These increases were not authorized by WCDHS.

53.     **Late Fees Due to Rent Abatement for Violations of Housing Quality Standards.** In a December 16, 2021 letter, WCDHS notified Defendants that their failure to correct Housing Quality Standards ("HQS") deficiencies would lead to cessation of subsidy payments, or "HAP abatement," with an effective date of February 1, 2022. WCDHS notified Defendants that when a unit is under abatement for HQS deficiencies, the owner is not entitled to retroactive Housing Assistance Payments. Federal regulations governing the HCV program prohibit owners from collecting abated amounts from their tenants.

54.     Defendants failed to correct HQS violations for six months, and Ms. Medina's unit was therefore in HQS abatement beginning February 1, 2022 and until on or about July 31, 2022. Ms. Medina continued to make her rental and utility payments on time for this period.

Page 11 - COMPLAINT

55.     Defendants began charging Ms. Medina monthly late charges of $75.00 in
February 2022 when Defendants stopped receiving payments from WCDHS. Defendants
charged Ms. Medina a $75 late fee every month between February 2022 and June 2023, for a
total of 17 months.

56.     **Pet Rent.** On April 1, 2022, Defendants also began charging Ms. Medina $25.00
per month for "pet rent." Pet rent is not permitted by the HAP contract, and the increase was
neither submitted for approval to WCDHS nor authorized by WCDHS. Defendants charged Ms.
Medina $25.00 for "pet rent" each month between April 2022 to June 2023, for a total of 15
months.

57.     **Unauthorized Rental Price Increases.** On April 1, 2022, while the unit was in
abatement, Defendants increased the rent from $1,150.00 to $1,260.00. Defendants did not
submit a rent increase request to WCDHS, and therefore WCDHS did not approve this rent
increase. Defendants charged Ms. Medina $1,260.00 for rent every month between April 2022
and March 2023, for a total of 12 months.

58.     During that time period, and on August 24, 2022, WCDHS issued a Rent Change
Adjustment Notice to Plaintiff and to Defendant Glen Ridge Apartments. The notice stated that
the HAP payment would change from $1,011 to $997 and that the rent to owner would remain
$1,150. The notice stated, "This amendment is presented to you in accordance with the terms and
conditions of the [HAP Contract] and/or Lease Agreement; therefore this amendment shall be
attached to and made part of your HAP Contract and/or Lease Agreement."

59.     On April 1, 2023, Defendants increased the rent from $1,260.00 to $1,385.00.
Again, Defendants did not submit a rent increase request to WCDHS, and WCDHS did not
approve this rent increase. From April 2023 through August 2023, inclusive and for a total of 5

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

months, Defendants charged Ms. Medina $1,385.00 and in excess of the maximum allowable rent under their HAP Contract.

60.    **Defective Notice for Increase in Late Fee Amount.** In January 2023, Defendants increased their late fee charge from $75 to $100. Defendants did not provide Ms. Medina with a 30-day written notice that the late fee would be increased, in violation of ORS 90.260(3) of the Oregon Residential Landlord and Tenant Act (ORLTA). Defendants also did not provide WCDHS with a written copy of this change to the lease, in violation of Part C, Paragraph 15(a), of the HAP Contract.

61.    Defendants charged Ms. Medina unlawfully increased late fees every month between January 2023 and June 2023, for a total of 6 months.

62.    **Defendants Attempted to Terminate Ms. Medina's Tenancy for Nonpayment of Amounts Defendants Were Not Entitled to Receive.** On February 21, 2023, Defendants served Ms. Medina with a termination notice for nonpayment, claiming that she owed $6,935.00 in rent arrears since June 2022; $674.00 in utility arrears since August 2021; $1,025.00 in late fees since February 2022; and $300.00 in pet rent since April 2022.

63.    On March 10, 2023, Defendants charged Ms. Medina $200.00 for "Professional Fees."

64.    On April 10, 2023, Defendants filed an eviction case, Washington County Circuit Court Case No. 23LT06346, against Ms. Medina based upon the February 21, 2023 termination notice.

65.    Ms. Medina secured rental assistance from a local community service organization, Community Action. Community Action paid Defendants $11,036.00 on May 15, 2023, constituting payment for February 2022 through June 2023, which constituted five out of

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

the six months the unit was in HQS abatement. The eviction case was dismissed on May 19, 2023.

66.     On May 1, 2023, Defendants charged Ms. Medina $169.00 for "Re-Enter March FED w/ Corr Code."

67.     On May 8, 2023, Defendants charged Ms. Medina $997.00 for "Restore May Charge." Defendants charged Ms. Medina this amount despite having received a payment from WCDHS for $997.00 on May 5, 2023.

68.     Defendants' actions in seeking to terminate Ms. Medina's tenancy caused reputational harms and significant mental harms and distress.

69.     After dismissal of the eviction action and beginning in May 2023, Defendants began crediting Ms. Medina's tenant ledger for some, but not all, of the unlawful overcharges.

70.     On September 1, 2023, Defendants again increased Ms. Medina's rent to $1,400 without proper notice or approval.

71.     Defendants never requested approval and therefore never received authorization from WCDHS for any of the rental price increases, pet rent, or increase to utility and late fees described above.

72.     Defendants never informed Plaintiff that the HAP Contract and HCV program rules prohibited them from requiring her to make these additional housing payments.

73.     From January 2021 through September 2023, and inclusive of thirty-three (33) months, Defendants charged Ms. Medina in excess of the maximum allowable rent under the HAP Contract.

74.     Upon information and belief, WCDHS made housing assistance payments to Defendants contingent upon Defendants' agreement not to charge in excess of the contract rent.

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

Defendants knowingly kept WCDHS unaware of their own material noncompliance and knowingly submitted false claims to the United States.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Violation of the False Claims Act, 31 U.S.C. § 3729(a)
### *Pursuant to 31 U.S.C. § 3730(b) ("Qui Tam" Action)*

75.     Plaintiff incorporates the paragraphs above as if set forth fully herein and further alleges:

76.     From January 2021 through September 2023 and while receiving payments in excess of the amount authorized by the HAP Contract and the contract rental price, Defendants knowingly presented and/or cause to be presented for payment thirty-three (33) separate false or fraudulent claims in violation of violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

77.     Defendants knowingly made, used, and/or caused to be made or used false statements or records, including false certifications and/or representations of compliance with the Department of Housing and Urban Development's regulations pertaining to the HCV Program in violation of 31 U.S.C. § 3729(a)(1)(B).

78.     Defendants acted in concert and conspired to commit the above violations in violation of 31 U.S.C. § 3729(a)(1)(C).

79.     Defendants signed documents expressly agreeing not to charge for rent, utilities, services or fees amounts in excess of the total contract rent price, and expressly agreed not charge Plaintiff above the amount expressly authorized by WCDHS and the HAP Contract. Defendants had actual knowledge that to charge rent in excess of the contract price would result in the Government's terminating and/or rescinding payments under the HAP Contract.

Page 15 - COMPLAINT

80.     Defendants' promise to the Government not to charge or accept money or other consideration from Plaintiff in excess of amounts approved by the WCDHS was material to the Government's decision to pay subsidy payments to Defendants. Defendants knew or recklessly avoided knowing that the Government would not have paid subsidy payments to Defendants had Defendants notified the Government of their noncompliance, or in the absence of such a promise.

81.     Defendants submitted the false claims with scienter as that term is used in the False Claims Act and with knowledge and the subjective belief that their claims were false; in deliberate indifference to the truth or falsity of the information submitted; or with reckless disregard to the truth or falsity of the information submitted.

82.     For this time period, the United States of America sustained damages in the amount of $20,420, which is the money that the United States paid to Defendants that would not have been dispersed had HUD or WCDHS been aware of the Defendants' violations of HAP Contract. Defendants are liable for three times the amount of damages that the United States suffered as a result of Defendants' actions, or $60,260.

83.     Each instance for which Defendants endorsed and presented a federally funded subsidy payment constitutes a separate false claim or representation against the United States within the meaning of 31 U.S.C. § 3729(a)(1).

84.     Pursuant to authority granted under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461, the U.S. Department of Justice issued interim final rules increasing the mandatory FCA penalties of $5,500 to $11,000 to the minimum penalty of $13,946 and maximum penalty of $27,894, per violation, for penalties assessed after February 12, 2024. 28 C.F.R. § 85.5(a), Table 1.

---

Page 16 - COMPLAINT

85.    If the United States proceeds with this action, Plaintiff is entitled to at least 15%

but not more than 25% of the proceeds per 31 U.S.C. § 3730(d)(1); If the United States does not

proceed with this action and Plaintiff proceeds on the government's behalf, Plaintiff is entitled to

not less than 25% and not more than 30% of the proceeds of this action. 31 U.S.C. Section

3730(d)(2).

86.    Defendants are responsible for the costs of this action under 31 U.S.C. §

3729(a)(3), and for Plaintiff's reasonable attorneys' fees, costs and expenses pursuant to 31

U.S.C. § 3730(d).

87.    Plaintiff reserves the right to amend this complaint to adjust the request for

compensation as well as to add additional defendants and new claims, including a claim for

punitive damages, as new information is learned in discovery.

**SECOND CLAIM FOR RELIEF**
**Discrimination on the Basis of Source of Income**
**Violation of Oregon Fair Housing Act, ORS 659A.421** *et seq.*

88.    Plaintiff incorporates the paragraphs above as if set forth fully herein and further

alleges:

89.    ORS 659A.421 provides that a landlord may not, on the basis of source of

income, make any distinction, discrimination or restriction in the price, terms, conditions or

privileges of the rental; attempt to discourage the rental; or coerce, intimidate, threaten or

interfere with a tenant in the exercise or enjoyment of any right under ORS 659A.421. Source of

income discrimination can be based upon the application of a policy or practice which creates a

disparate impact on HCV recipients.

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

90.     Defendants' conduct in violating the terms of the HAP Contract, issuing termination notices, and initiating an eviction proceeding against Plaintiff violated the source of income protections of the Oregon Fair Housing Act.

91.     As a result of Defendants' conduct, Plaintiff was caused economic and non-economic damages in an amount to be proven at trial, and including loss of economic opportunity, fear of becoming homeless, humiliation, anxiety, and fear of and actual damage to Plaintiff's record and reputation.

92.     Plaintiff is entitled to recover compensatory damages pursuant to ORS 659A.885.

93.     Plaintiff has retained legal counsel to prosecute her claims and is entitled to reasonable attorneys' fees, costs and disbursements pursuant to ORS 659A.885.

94.     Plaintiff reserves the right to amend this complaint to adjust the request for compensation as well as to add additional defendants and new claims, including a claim for punitive damages, as new information is learned in discovery.

### THIRD CLAIM FOR RELIEF
### Oregon Residential Landlord Tenant Act
### Unlawful Fees in Violation of ORS 90.302

95.     Plaintiff incorporates the paragraphs above as if set forth fully herein and further alleges:

96.     For all relevant times, Defendants' rental agreement with Plaintiff encompassed the terms set forth in the lease agreement and the HAP Contract.

97.     As alleged above, Defendants assessed Plaintiff fees in violation of the terms of Plaintiff's rental agreement and ORS 90.302 on seven (7) separate occasions from the time period of May 2023 through June 2023, and constituting seven (7) separate violations to ORS 90.302.

Page 18 - COMPLAINT

98.     As a result of Defendants' conduct, Plaintiff was caused economic and non-economic damages in amounts to be proven at trial.

99.     Pursuant to ORS 90.302(8), Plaintiff is entitled to recover the greater of twice her actual damages, or $300 per occurrence.

100.    Plaintiff seeks an award of reasonable attorney fees and costs pursuant to ORS 90.255.

101.    Plaintiff reserves the right to amend this complaint to adjust the request for compensation as well as to add additional defendants and new claims, including a claim for punitive damages, as new information is learned in discovery.

## VI. JURY TRIAL DEMAND

102.    Plaintiff requests a trial by her peers on each of her claims for relief.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the United States respectfully request the following relief:

A.  Find that Defendants violated 31 U.S.C. § 3729(a)(1) of the False Claims Act and are jointly and severally liable to the United States of America.

B.  Find that from January 2021 through September 1, 2023, inclusive, Defendants committed thirty-three separate violations of the False Claims Act.

C.  Award a civil penalty against Defendants jointly and severally of not less than $13,946 and not more than $27,894 for each separate violation.

D.  Award the United States of America treble damages for the amount of damages it actually sustained as a result of Defendants' violations of the False Claims Act.

E.  Award the United States costs of this action under 31 U.S.C. § 3729(a)(3) of the False Claims Act.

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

F.  Award the *qui tam* Plaintiff her share of the proceeds or settlement pursuant to 31

U.S.C. § 3730(d).

G.  Award Plaintiff compensatory damages resulting from Defendants' violation of ORS

659A.421; and ORS 90.302 in an amount to be determined at trial.

H.  Award Plaintiff attorneys' fees, costs and expenses pursuant to 31 U.S.C. § 3730(d);

ORS 659A.885; and ORS 90.255.

I.  Award pre and post-judgment interest.

J.  Award of any further relief the Court deems just and equitable.

Dated:  April 12, 2024

Respectfully submitted,

PEOPLE'S LAW PROJECT

/s/Jane L. Moisan
Jane L. Moisan, OSB No. 181864
jane@pdxplp.com

*Of Attorneys for Qui Tam Plaintiff*

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Ste. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **ANNA MEDINA, AND ANNA MEDINA** | **FILED UNDER SEAL** |
| Plaintiffs, | Civil Action No. |
| v. | **CERTIFICATE OF SERVICE** |
| **UAA GLEN RIDGE, LLC; NORRIS & STEVENS, INC., DK OREGON, INC., and BECHTOLDT FAMILY LIVING PARTNERSHIP** | |
| Defendants. | |

### CERTIFICATE OF SERVICE

I hereby certify that on the date below and in conformity with 31 U.S.C. § 3730(b)(2),

F.R.Civ.P. 4(i)(1)(ii), DOJ Guidance 5-5.124, and 28 C.F.R. § 0.77(j), I served a true and

accurate copy of the foregoing Complaint and separate Disclosure Statement upon the United

States Government by (1) causing a copy to be mailed by registered mail to the Assistant United

States Attorney, Civil Process Clerk, Office of the United States Attorney, District of Oregon,

1000 SW Third Ave, Suite 600, Portland, Oregon 97204; and (2) causing a copy to be mailed by

registered mail upon the Attorney General of the United States addressed as follows:

> Office of the Attorney General of the United States
> c/o Assistant Attorney General for Administration
> Justice Management Division
> 950 Pennsylvania Avenue NW, Room 1111
> Washington DC 20530

//

Page 21 - COMPLAINT

Dated:  <u>April 12, 2024</u>

/s/Jane L. Moisan    
Jane L. Moisan, OSB No. 181864
jane@pdxplp.com

PEOPLE'S LAW PROJECT
1500 SW First Avenue, Stc. 1000
Portland, OR 97201
Tel: (971) 258-1292
www.pdxplp.com